*E-Filed 10/05/09*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARIA A. GARVIN, et al.,<br><br>        Plaintiffs,<br>  v.<br><br>LINDA TRAN, et al.,<br><br>        Defendants.<br>_____/ | No. C 07-1571 RS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Plaintiffs' allegations describe what would be, if proven, a particularly egregious example of some of the mortgage lending practices that ultimately culminated in the so-called subprime meltdown. Plaintiffs are all individuals who speak Spanish as a first language. They contend, in essence, that they were duped by defendants into entering into onerous loans they could not afford and did not understand. In this motion, plaintiffs seek a determination that defendant Pablo Curiel violated the provisions of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"), the Home Ownership and Equity Protection Act, 15 USC 1639 *et seq.* ("HOEPA"), the Real Estate Settlement Procedures Act, 12 U.S.C § 2601 *et seq.* ("RESPA"), and California Civil Code § 1632, when he made loans to plaintiffs to cover the down payments they otherwise would have been required to make.

Curiel largely does not dispute that the loans he made violated lending laws, and he is agreeable to rescission, provided he recovers his principal. Curiel portrays himself as having simply not understood that these loans implicated different legal requirements than certain other investments he had previously been making, and suggests that he was a victim of the loan broker defendants as well. Because the undisputed facts show that Curiel, regardless of his intent, failed to comply with some, but not all, of the statutes on which plaintiffs rely, the motion will be granted in part and denied in part.

## II.  BACKGROUND

Although the details of each plaintiff's situation differ to some degree, typically plaintiffs first responded to advertisements placed in Spanish-language magazines by defendant Norma Valdovinos inviting readers to purchase homes with little to no down payments and monthly payments of only a few thousand dollars. Valdovinos would persuade plaintiffs to make offers above the listing prices, and then referred them to mortgage brokerages owned by defendants Linda Tran and Rawa Ghajar. Tran and Ghajar would obtain a first and second mortgage for each plaintiff through large institutional lenders.[1] Allegedly Tran and Ghajar misrepresented the terms of these loans to plaintiffs, and provided fraudulent applications to the lenders. The loans usually featured negative amortization, balloon payments, adjustable interest rates, and prepayment penalties, all of which had the effect that plaintiffs would only be able to afford the monthly payments for a limited period of time.

To obviate the need for down payments, Tran and Ghajar obtained a third loan from Curiel for each transaction. Curiel had previously invested in existing deeds of trust, buying them at a discount from persons seeking to liquidate notes they had taken in connection with real estate transactions. Curiel contends that those prior transactions, conducted through real estate agents, were legal, and that he did not realize different legal requirements would apply when he began

---

[1] Consistent with typical California practice, the transactions were structured using deeds of trust, rather than true mortgages. This order will use the term mortgage in its colloquial sense.

United States District Court
For the Northern District of California

making new loans such as those he made to plaintiffs in this action. All of Curiel's loans to plaintiffs were processed through the brokers; it is undisputed that Curiel had no direct interactions or communications with plaintiffs at any time during the transactions.

### III. LEGAL STANDARD

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-324 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of his case with respect to which he bears the burden of proof at trial. *Id*. at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, i.e., "facts that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, "[w]here the record taken as a whole

3

could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

In this case, plaintiffs are not seeking summary judgment as to the whole of their claims, or even as to the whole of any one claim. Rule 56 authorizes the court "to the extent practicable" to determine what material facts are not genuinely at issue, and then to "issue an order specifying what facts — including items of damages or other relief — are not genuinely at issue." Fed. R. Civ. P. 56(d)(1). Thereafter, "[t]he facts so specified must be treated as established in the action." *Id.*

## IV. DISCUSSION

### A. The effect of the parties' positions on rescission

Curiel's most vigorously asserted defense to all of plaintiffs' claims is his contention that plaintiffs demanded rescission, he has agreed to it, and all that is left is to arrange the exact terms of the rescissions and to award attorney fees.[2] Plaintiffs respond that the statutes they contend were violated provide for actual damages, statutory damages, and in some cases penalties, any or all of which they may still be entitled to recover. Citing *Paularena v. Superior Court*, 231 Cal.App.2d 906, 916 (1965) Curiel contends that the parties here have effectively already made a "contract of rescission," thereby extinguishing plaintiffs' "inconsistent causes of action for damages."

Although it is black letter law that a plaintiff ultimately must make an election where inconsistent alternative remedies have been pleaded, Curiel has provided insufficient analysis or authority for the Court to conclude on the present record that plaintiffs are necessarily barred at this juncture from seeking any damages or penalties that may be provided for in these statutes, or even that damages or penalties under these particular statutes will not be recoverable should the rescissions be completed. Furthermore, because plaintiffs have made it very clear that all they seek

---

[2] As to those plaintiffs who have already suffered foreclosure, Curiel argues there is even less remaining to do, because his liens on the properties have been extinguished.

4

in this motion is a narrow finding that Curiel violated the statutes, it is not necessary to reach the question of what, if any, damages they might be able to pursue.[3]

B. <u>TILA</u>

Plaintiffs seek a determination that Curiel violated the disclosure provisions of TILA.[4] Curiel admits that, with the exception of the loan to plaintiff Bravo, the loans he made were subject to TILA. Curiel explains that he personally was not aware that these loans implicated different legal requirements than prior investment vehicles in which he had participated. Curiel implies that he believed the brokers who handled the loans had the primary responsibility to comply with any disclosure or other legal requirements, but he does not contest that the statute imposed duties on him. Curiel forthrightly admitted in deposition that he made no disclosures in connection with any of the loans. See Hamilton Decl., Ex. A. at 125 ("I didn't provide any disclosures. What disclosures?").

Under these circumstances, and subject to the discussion above regarding the fact that no finding is being made as to plaintiffs' right to any remedy, the undisputed facts establish that Curiel violated TILA when making loans to all plaintiffs except Garvin and Bravo.[5]

---

[3] Similarly, it is not necessary to reach the question discussed extensively in Curiel's opposition of whether and under what circumstances plaintiffs might be required to establish an ability to repay the loan proceeds to Curiel before he is required to release his liens. See Opposition at 10:23-12:14 (discussing *Yamamoto v. Bank of New York*, 329 F.3d 1167 (2003)). To the extent that this order finds that Curiel violated certain statutes, it is only a finding that the violations occurred as a matter of undisputed fact. Whether such violations (or any other facts) may create rescission rights, an entitlement to damages, or both, remains to be litigated and decided.

[4] Plaintiff Garvin does not participate in this prong of the motion because she concedes her TILA claims are time barred. Plaintiff Bravo does not participate because he concedes his loan related to investment property, outside the consumer scope of TILA.

[5] Citing the complaint, Curiel asserts that the loan documents for plaintiffs Cirila and Prospero Torralba were signed more than a year before this action was filed, thereby time-barring claims under the federal statutes. Without citation to evidence (and in apparent contradiction to the complaint) plaintiffs contend that the deed of trust and promissory notes were signed three days later, making the action timely. While that naked assertion would not save the claim, plaintiffs also rely on the date the transaction *closed*, though again the date given in their brief is different than

5

C. RESPA

When Congress enacted RESPA, it declared that the statute was intended to result in:

(1) . . . more effective advance disclosure to home buyers and sellers of settlement costs;

(2) . . . the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services;

(3) . . . a reduction in the amounts home buyers are required to place in escrow accounts . . .

(4) . . . in significant reform and modernization of local recordkeeping of land title information.

12 U.S.C. § 2601(b).

Curiel contends he faces no liability under this statute because neither he nor anyone else charged or paid any settlement fees in connection with the loans he funded. Plaintiffs respond that Curiel in fact charged an exorbitantly high fee that was built into each loan. Plaintiffs are missing the point that RESPA is not directed at regulating *finance* charges, but at other and different charges—specifically *settlement costs—* that are sometimes charged to borrowers in connection with real property loans.[6] A lender probably would fall under RESPA were it to incur costs for settlement services and pass those costs along to the borrower by adding them to the principal balance due (rather than collecting them at the closing). RESPA might even apply were a lender to

---

what is alleged in the complaint. Compare Reply Brief at 3:9 with SAC ¶ 197. On this record, the Court declines to conclude that the Torralbas' claims are time-barred.

[6] The statute defines "settlement services" as "any service provided in connection with a real estate settlement including, but not limited to, the following: title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, the preparation of documents, property surveys, the rendering of credit reports or appraisals, pest and fungus inspections, services rendered by a real estate agent or broker, the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of loans), and the handling of the processing, and closing or settlement." While it seems unlikely that no such activity was undertaken (and paid for by someone) in connection with plaintiffs' loan transactions as a whole—i.e. in the course of obtaining the primary and/or secondary mortgages—it is at least plausible that no such activities were undertaken or charged for in connection with the specific loans provided by Curiel.

incur charges for settlement services that it sought to recover from the borrower through imposing a higher interest rate. Plaintiffs, however, have failed to establish as a matter of undisputed fact that either of those circumstances occurred here. Curiel contends that there simply were no charges for settlement services incurred or imposed with these particular loans, and plaintiffs have not shown otherwise. While plaintiffs have demonstrated that these were expensive loans, they have not established that any portion of that expense represented disguised fees for settlement services, as opposed to simply a very high effective interest rate.[7]

Finally, the charging allegations of the Second Amended Complaint related to RESPA generally allege kickbacks among defendants and "unearned fees," which, if proven, might very well violate RESPA. In this motion, however, plaintiffs have not come forward with any evidence connecting Curiel to any kickbacks or to the receipt of any fees other than those discussed above. Accordingly, plaintiffs' motion must be denied to the extent it seeks a finding that Curiel violated RESPA.

D. HOEPA

Plaintiffs Jesus and Antonia Arreola, Tomas and Martha Hernandez, and Raul Torres all seek a determination that Curiel violated HOEPA in connection with the loans he made to them. HOEPA was enacted to supplement TILA, and it requires specific disclosure obligations and substantive requirements on certain categories of high-cost mortgages. 15 U.S.C. §§ 1602(aa), 1639. As with TILA, Curiel offers no real argument that the statute does not apply to these loans, or that he complied with its requirements. Accordingly, the undisputed facts establish that Curiel violated TILA when making loans to the Arreolas, the Hernandezes, and Torres.

---

[7] Curiel further argues that by virtue of rescission, plaintiffs ultimately will have paid no fees of any kind, finance charges or otherwise. Indeed, by stipulation, plaintiffs have made no payments on the loans since this controversy began, and Curiel has agreed to credit all payments they made against the principal. However, that alone would not free Curiel from liability under RESPA or the other statutes for having *charged* any improper fees in the first instance, regardless of whether they were ultimately *paid*.

E.  <u>California Civil Code § 1632</u>

All plaintiffs seek a determination that Curiel violated California Civil Code § 1632 by failing to provide them with Spanish translations of their loan documents.  That section provides that when certain types of agreements are negotiated primarily in Spanish or other specified languages, prior to execution of the contract the consumer must be given "a translation of the contract or agreement in the language in which the contract or agreement was negotiated, which includes a translation of every term and condition in that contract or agreement." Cal. Civ. Code § 1632(b).

Subsection (2) of §1632(b), generally exempts real property transactions from the types of contracts to which the translation requirement applies.  Subsection (4), however, makes the requirement applicable to real property transactions negotiated by brokers where the property is "for use primarily for personal, family or household purposes . . . ." § 1632(b)(4).

Here, with the exception of plaintiff Bravo, there is no dispute that all of the loans were negotiated by a broker and involved residential property and were therefore within the scope of §1632(b)(4).  Curiel speculates that perhaps some of the plaintiffs could or did negotiate at least partly in English, but he has not introduced sufficient evidence to create a triable issue of fact, in light of the declarations of plaintiffs showing that the loans were primarily negotiated in Spanish.

Finally, Curiel again points out that he had no communications with plaintiffs in *any* language, implying that he had no personal responsibility under this statute to ensure translations were provided.  The statute does state that it is applicable to "[a]ny person engaged in a trade or business who negotiates primarily in [the specified languages]."  While that definition does not apply to Curiel personally, courts have recognized that a defendant may not escape potential liability under the statute by acting through the agency of a broker. See *Marcelos v.Dominguez*, 2008 WL 1820683, at *8-9 (N.D. Cal 2008); *Munoz v. International Home Capital Corp.,* 2004 WL 3086907,

at *9 (N.D. Cal. 2004).  Accordingly, the undisputed facts establish that Curiel violated § 1632 when making loans to all plaintiffs except Bravo. [8]

## V.  CONCLUSION

Plaintiffs' motion for partial summary judgment is granted insofar as:

1. All plaintiffs except Garvin and Bravo have established that Curiel violated TILA with respect to the loans he made to them.

2. Plaintiffs Jesus and Antonia Arreola, Tomas and Martha Hernandez, and Raul Torres have established that Curiel violated HOEPA with respect to the loans he made to them.

3. All plaintiffs except Bravo have established that Curiel violated Cal. Civ. Code § 1632 with respect to the loans he made to them.

The motion is otherwise denied.

IT IS SO ORDERED.

Dated: 10/05/09

_____
RICHARD SEEBORG
UNITED STATES MAGISTRATE JUDGE

---

[8] Plaintiffs' argument that there is no limitation in §1632 to residential real property transactions is not tenable in light of the requirement that the loan be made "for use primarily for personal, family or household purposes . . . ." § 1632(b)(4).