1  KYRA KAZANTZIS (STATE BAR # 154612)
   ANNETTE D. KIRKHAM (STATE BAR # 217958)
2  JESSICA FRY (STATE BAR # 264480)
   **FAIR HOUSING LAW PROJECT**
3  **LAW FOUNDATION OF SILICON VALLEY**
   152 N. Third St., 3rd Fl.
4  San Jose, CA 95112
   Telephone: (408) 280-2412
5  Facsimile: (408) 293-0106
   Email: kyrak@lawfoundation.org; annettek@lawfoundation.org;
6         jessicaf@lawfoundation.org

7  WILLIAMS J. GOINES (STATE BAR NO. 61290)
   KAREN ROSENTHAL (STATE BAR NO. 209419)
8  CINDY HAMILTON (STATE BAR NO. 217951)
   ALICE Y. CHU (STATE BAR NO. 264990)
9  **GREENBERG TAURIG LLP**
   1900 University Avenue, 5th. Floor
10 East Palo Alto, CA 94303
   Telephone: (650) 328-8500
11 Facsimile: (650) 328-8508
   Email: goinesw@gtlaw.com; rosenthalk@gtlaw.com
12        hamiltonc@gtlaw.com; louiea@gtlaw.com

13 Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARIA A. GARVIN, et al.,<br><br>           Plaintiff,<br><br>v.<br><br>LINDA TRAN, et al.,<br><br>           Defendants. | Case No. C07-01571 HRL<br><br>**PLAINTIFF MARIA GARVIN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT BY COURT AGAINST DEFENDANT GOLDEN HILLS ASSOCIATES, INC.**<br><br>F.R.C.P. 55(B)(2)<br><br>Date: September 27, 2011<br>Time: 9:00 a.m.<br>Dept.: Courtroom 2<br>Judge: Hon. Howard R. Lloyd |

Plaintiff Maria Garvin's MPA ISO Motion for Entry of Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,754,534v1 9-2-11

1

## TABLE OF CONTENTS

Page

I. STATEMENT OF RELEVANT FACTS .................................................................................. 2

II. PROCEDURAL HISTORY OF DEFAULT ........................................................................ 11

III. ARGUMENT ................................................................................................................... 11

    A. Legal Standard ........................................................................................................ 11

    B. Negligence ............................................................................................................... 11

    C. California Unfair Competition Act, Cal. Bus. & Prof. Code § 17200 et seq. ............ 13

    D. Fraud ....................................................................................................................... 14

    E. Breach of Fiduciary Duty ......................................................................................... 15

    F. Conspiracy to Defraud ............................................................................................. 16

IV. DAMAGES ..................................................................................................................... 17

V. CONCLUSION ................................................................................................................. 17

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*In re Consolidated Pretrial Proceeding in Air West Securities Litigation*
  436 F. Supp. 1286 (N.D. Cal. 1977) ................................................................. 11

*TeleVideo Sys., Inc. v. Heidenthal*
  826 F. 2d 915 (9th Cir. 1987) ........................................................................... 11

**STATE CASES**

*Barry v. Raskov*
  232 Cal. App. 3d 447 (1991) ....................................................................... 12, 15

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*
  20 Cal. 4th 163 (1999) ................................................................................ 13, 14

*Hoyem v. Manhattan Beach City Sch. Dist.*
  22 Cal. 3d 508 (1978) ........................................................................................ 12

*Lazar v. Superior Court*
  12 Cal. 4th 631 (1996) ...................................................................................... 14

*People v. Beaumont Inv., Ltd.*
  3 Cal. Rptr.3d 429 (2003) ................................................................................ 16

*Roberts v. Lomanto*
  112 Cal. App. 4th 1553 (2003) ......................................................................... 15

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*
  17 Cal. 4th 553 (1998) ...................................................................................... 13

*Wyatt v. Union Mortgage Co.*
  24 Cal. 3d 773 (1979) ................................................................................. 12, 15

**STATE STATUTES**

California Business & Professions Code § 17200 ........................................... 13, 14, i
California Business & Professions Code § 17203 .................................................. 14
California Business & Professions Code § 17204 .................................................. 13
California Civil Code § 1689 ................................................................................... 15
California Civil Code § 3343 ................................................................................... 15

Plaintiff Maria Garvin (hereinafter "Ms. Garvin") respectfully submits this memorandum in support of his motion for entry of default judgment against Defendant Golden Hills Associates, a California corporation doing business as Century 21 Golden Hills ("Golden Hills").

## I. STATEMENT OF RELEVANT FACTS

Ms. Garvin is a Hispanic woman from Mexico, over the age of 18 and a resident of Santa Clara County. Declaration of Maria Garvin ("Garvin Decl.") at ¶ 2; Second Amended Complaint [ECF 50] ("SAC") at ¶ 14, 49

Ms. Garvin's first language is Spanish, but she speaks and understands limited English. Garvin Decl. at ¶ 2; SAC at ¶ 14, 49.

All communications by and to Ms. Garvin in this declaration occurred in the Spanish language, unless specifically alleged otherwise. Garvin Decl. at ¶ 2; SAC at ¶ 14.

Ms. Garvin currently resides at 817 Pentz Way in San Jose CA (hereinafter "Pentz Way Property") with her daughter Roxanna Navarez, and son-in-law, Luis Navarez. Garvin Decl. at ¶ 3; SAC at ¶ 50.

Before purchasing the Pentz Way Property, Ms. Garvin rented an apartment in San Jose with her daughter and son-in-law for a total of $1,250 per month. Garvin Decl. at ¶ 5; SAC at ¶ 51.

Sometime in 2005, Ms. Garvin and her family decided that instead of renting, they wanted to purchase a home. At that time, Ms. Garvin earned approximately $1,000 per month as a home health aide. Garvin Decl. at ¶6; SAC at ¶ 52, 53.

On information and belief, Ms. Garvin's son-in law earned $3,000 per month, and her daughter earned approximately $1,200 per month. Garvin Decl. at ¶ 7; SAC at ¶ 53.

A friend of Ms. Garvin's daughter referred them to Norma Valdovinos of Century 21 Golden Hills. On information and belief, shortly after getting her phone number, Roxanna called Valdovinos and set up an appointment for them. Garvin Decl. at ¶ 8; SAC at ¶ 54.

In early April 2005, Roxanna and Luis Navarez and Ms. Garvin met with Valdovinos at her office. Valdovinos checked Roxanna and Luis's credit but Valdovinos said that they did not have good credit or sufficient credit history. Garvin Decl. at ¶ 9, 10; SAC at ¶ 55.

Plaintiff Maria Garvin's MPA ISO Motion for Entry of Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,754,534v1 9-2-11

2

Valdovinos suggested that they check Ms. Garvin's credit. Her credit score was much better, so they all decided that the loans and the house would be in Ms. Garvin's name so they could get a better deal. Garvin Decl. at ¶ 11; SAC at ¶ 55.

Ms. Garvin told Valdovinos exactly how much money she made every month and Valdovinos told Ms. Garvin that would be no problem. Garvin Decl. at ¶ 12; SAC at ¶ 56.

Ms. Garvin also told Valdovinos that she and her family were looking for a two-bedroom home and could afford to pay no more than $2200 per month on a mortgage. Valdovinos again responded that would be "no problem" and agreed to help them purchase a home. Valdovinos also said that there were many houses on the market that Ms. Garvin and her family could afford. Garvin Decl. at ¶ 13; SAC at ¶ 56.

Ms. Garvin relied on Valdovinos' statements in continuing with the transaction because she was a real estate professional and understood the housing market better than Ms. Garvin did. Garvin Decl. at ¶ 14; SAC at ¶ 58.

Valdovinos then referred Ms. Garvin to defendant Linda Tran for assistance with financing. At the time, Tran was employed by Tara Home Realty, Inc. Valdovinos explained that she and Tran often worked together as a team and had been working together "for years." Garvin Decl. at ¶ 15; SAC at ¶ 59.

One week later, Roxanna Navarez, Luis Navarez, Norma Valdovinos, and Ms.Garvin met with Linda Tran at her Tara Home Financial office with the assistance of a translator from Tran's office. Garvin Decl. at ¶ 16; SAC at ¶ 60.

At this meeting, Tran did some calculations and quoted Ms. Garvin a very high monthly mortgage payment. Garvin Decl. at ¶ 17; SAC at ¶ 61.

Ms. Garvin told Tran that her family could not afford such a high payment. Tran responded that was fine because she had other loan programs that she could offer them, and promised she would find them "a low rate." Garvin Decl. at ¶ 18; SAC at ¶ 62.

A few days later Ms. Garvin got a phone call from Tran informing Ms. Garvin that she had a "new plan" and could finance her home purchase with monthly mortgage payments of $2700 per month. Although this amount was higher than what her family and Ms. Garvin had

Plaintiff Maria Garvin's MPA ISO Motion for Entry of Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,754,534v1 9-2-11

3

originally planned, they agreed that they could make this payment. Tran did not give Ms. Garvin any other information about the loan. Garvin Decl. at ¶ 19; SAC at ¶ 63.

Tran's statement about the monthly payment was false and misleading and Ms. Garvin relied upon this statement when she purchased the property. Garvin Decl. at ¶ 20; SAC at ¶ 64.

After looking at about three homes with Valdovinos from late April to early May 2005, Ms. Garvin and her family decided to make an offer on the Pentz Way property, which was listed at $638,000. Valdovinos told Ms. Garvin to make an offer on the property for $10,000 more than the listing price, and the sellers accepted the offer of $648,000. Garvin Decl. at ¶ 21; SAC at ¶ 65.

In several conversations with Valdovinos, Ms. Garvin told her that before she signed anything, Ms. Garvin wanted to go over the loan documents with Valdovinos first because Ms. Garvin wanted her to explain the paperwork as Ms. Garvin felt that her understanding of English was not sufficient. Valdovinos agreed to do so. Garvin Decl. at ¶ 22; SAC at ¶ 66.

On or about May 31, 2005, Valdovinos called Ms. Garvin and said that her assistant Claudia was going to pick Ms. Garvin up to take her to Morgan Hill to sign the loan papers. Ms. Garvin asked Valdovinos why Claudia was going to take her to sign documents when Ms. Garvin hadn't seen any documents ahead of time as she had previously requested on several occasions. Valdovinos told Ms. Garvin that she would see the documents when Claudia came to pick her up, and reassured Ms. Garvin that she (Valdovinos) would also be present. Based on Valdovinoss assurances, Ms. Garvin agreed to proceed with the home purchase. Garvin Decl. at ¶ 23; SAC at ¶ 67.

On information and belief, Claudia is Valdovinos's daughter, and an employee of Linda Tran, Tara Home Financial, Absolute Investments, and Ghajar. SAC at ¶ 68.

That same day, on or about May 31, 2005, Claudia came to Ms. Garvin's apartment to take her to the title company to sign the final loan documents. Garvin Decl. at ¶ 24; SAC at ¶ 69.

In the car on the way to the title company, Claudia told Ms. Garvin not to tell "them" that she did not have "this money." Ms. Garvin was confused and did not understand what Claudia

Plaintiff Maria Garvin's MPA ISO Motion for Entry of Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,754,534v1 9-2-11

4

was talking about. When Ms. Garvin asked Claudia to explain it to her, Claudia said that she did not know the details. SAC at ¶ 70.

When Claudia and Ms. Garvin arrived at the title company, they met with a male employee who presented Ms. Garvin with a stack of transactional documents written in English. Contrary to Valdovinos' assurances, she did not come with Claudia and was not present when Ms. Garvin signed the loan documents. Garvin Decl. at ¶ 25; SAC at ¶ 71.

None of these documents had been presented to or explained to Ms. Garvin at any time beforehand and no one explained any of the documents to her at closing. Ms. Garvin was merely instructed where to sign. Garvin Decl. at ¶ 27; SAC at ¶ 72.

As they were sitting at the table, Claudia again told Ms. Garvin, "if they ask you about the down payment you don't say nothing." Ms. Garvin asked why, and Claudia responded, "Just don't say nothing about this money." Ms. Garvin still didn't understand what Claudia was talking about. Ms. Garvin only knew about the $5,000 she put down on the house as a deposit. Garvin Decl. at ¶ 6; SAC at ¶ 73.

Trusting that Tran and Valdovinos knew what they were doing because they were real estate professionals, Ms. Garvin proceeded to sign the loan documents and afterwards, Claudia took Ms. Garvin out to lunch. Garvin Decl. at ¶ 29; SAC at ¶ 74.

At the time that she signed the loan documents, Ms. Garvin understood that she was getting two loans: one from Washington Mutual Bank, and the other from National City Bank. Ms. Garvin believed that the monthly payments for these two loans would be $2,700 per month. Garvin Decl. at ¶ 30; SAC at ¶ 75.

The entire signing took no more than 45 minutes, and Ms. Garvin was given only unsigned copies of the documents to take home with her. Garvin Decl. at ¶ 31; SAC at ¶ 76.

Approximately two days later, on or about June 2, 2005, Claudia called Ms. Garvin again and told her to come into Tran's office to sign the documents for "the other loan." Garvin Decl. at ¶ 32; SAC at ¶ 77.

Ms. Garvin was very surprised by Claudia's phone call because Ms. Garvin had never discussed getting a third loan with any of the Defendants. Ms. Garvin asked Claudia why she had

Plaintiff Maria Garvin's MPA ISO Motion for Entry of Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,754,534v1 9-2-11

5

to sign more loan documents when she had just signed the loan documents two days earlier. Claudia responded that this was "the way it worked" and told Ms. Garvin that if she did not sign these new loan documents, she would incur a penalty. Thus, Ms. Garvin proceeded to Tran's office, but told Claudia that she was not going to sign any documents until she talked to Tran. Garvin Decl. at ¶ 33; SAC at ¶ 78.

When she arrived at Tran's office, Ms. Garvin was every upset and asked Tran why she had to sign more loan documents. Using her assistant, Claudia, to translate, Tran told Ms. Garvin that there was no other way for her to purchase the home, because they needed $96,000 more to put towards the home. Tran told Ms. Garvin that she could try another bank and then started calculating numbers. However, the alternative plan she came up with would have increased Ms. Garvin's monthly payment to $4,000 per month- far more than what her family and Ms. Garvin could afford. Garvin Decl. at ¶ 34, 38; SAC at ¶ 79.

Ms. Garvin did not know that the HUD-1 Settlement Statement for the first two loans fraudulently indicated that she was making a $96,000 down payment. Ms. Garvin later discovered that this was funds from a third loan that Tran and Valdovinos had arranged with defendant Pablo Curiel without her knowledge or consent. Garvin Decl. at ¶ 39; SAC at ¶ 80.

Ms. Garvin then reviewed the Pablo Curiel straight note, that Tran had given to Ms. Garvin to sign, and noticed that the loan amount was for $121,500. Ms. Garvin asked Tran why the loan was for $121,500 and not $96,000. Tran responded that the additional amount represented 2 years of pre-paid interest, which is almost 27% of $96,000. Garvin Decl. at ¶ 40; SAC at ¶ 81.

Ms. Garvin then told Tran "do you know this is not legal?" Tran replied she did not know about that, but since Ms. Garvin had already signed the other loan documents, Ms. Garvin would incur a penalty if she did not sign for this third private loan. Ms. Garvin told Tran, "I may be Mexican but I am not stupid." Tran tried to placate Ms. Garvin and told her, "Oh no, it's not what you think. This is going to be fine. Don't worry. I can refinance the loan for you in six months for free." Ms. Garvin relied on her statements because she was her agent, and she knew more about these kinds of transactions. Garvin Decl. at ¶ 41; SAC at ¶ 82.

Plaintiff Maria Garvin's MPA ISO Motion for Entry of Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,754,534v1 9-2-11

6

Ms. Garvin was very upset by this turn of events because she had trusted Valdovinos and Tran to be honest with her and act in her best interests. Moreover, Ms. Garvin and her family had already given notice to their landlord, and they were all packed and ready to move into their new home. Garvin Decl. at ¶ 42; SAC at ¶ 83.

In agreeing to sign the loan documents Ms. Garvin had relied upon Tran's statements, which were false and misleading. Garvin Decl. at ¶ 43; SAC at ¶ 84.

Unlike the stack of transactional documents that Ms. Garvin had signed a few days before, Tran presented Ms. Garvin with a single document- a "Straight Note" for $121,500, payable to Pablo Curiel. Garvin Decl. at ¶ 44; SAC at ¶ 85.

Absolutely no disclosures were provided to Ms. Garvin in connection with the Pablo Curiel loan, including any of the disclosures mandated under TILA or RESPA or California law. Garvin Decl. at ¶ 45; SAC at ¶ 86.

Upon leaving Tran's office, Ms. Garvin attempted to call Valdovinos three times but got no answer. Garvin Decl. at ¶ 46; SAC at ¶ 87.

Ms. Garvin then called Valdovinos from my friend's cell phone because she suspected that Valdovinos was avoiding Ms. Garvin. Valdovinos answered her phone and stated to Ms. Garvin, "Don't worry" and, "We can always refinance you." Garvin Decl. at ¶ 47; SAC at ¶ 88.

Since the time of the transaction, Ms. Garvin learned that defendant Linda Tran falsified or caused to be falsified her loan application which contained many false or misleading misrepresentations concerning, her assets, income and employment history, including the following:

" That Ms. Garvin's monthly income was $10,990;
" That Ms. Garvin had $31,000 in an account with Bank of America;
" That Ms. Garvin had $55,000 in an another account with Bank of America
" That Ms. Garvin's total liquid assets were $91,000;
" That Ms. Garvin had a net worth of $90,434; and
" That this information was taken from Ms. Garvin from a phone interview with "Jimmy Vu," an individual whom Ms. Garvin had never met or spoken to.

Plaintiff Maria Garvin's MPA ISO Motion for Entry of Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,754,534v1 9-2-11

7

Garvin Decl. at ¶ 48-54; SAC at ¶ 89.

The final HUD-1 settlement statement indicates that defendants received the following unearned, excessive, unreasonable and/or duplicative fees in conjunction with the loan transaction:

- " Loan Origination Fee (1%) of $5,184 paid to Tara Home Financial;
- " Processing Fee of $595 paid to Tara Home Financial;
- " Broker Fee of $800 paid to Tara Home Financial;
- " Yield Spread Premium of $15,552 paid to Tara Home Financial;
- " Second Yield Spread Premium of $500 paid to Tara Home Financial; and
- " Administration fee to Century 21 Golden Hills.

Garvin Decl. at ¶ 55; SAC at ¶ 90.

Defendants also caused the final HUD-1 to be falsified by fraudulently indicating that Ms. Garvin had put down a $96,000 down payment in addition to the $5,000 earnest money deposit that hr son-in-law paid to Tran. Garvin Decl. at ¶ 56; SAC at ¶ 91.

Defendants also arranged for Ms. Garvin to pay approximately $523 for homeowners insurance through Defendant Paul Curiel. Ms. Garvin was never informed of or consented to this homeowner's insurance policy, and did not have the opportunity to negotiate its terms. Garvin Decl. at ¶ 57; SAC at ¶ 96.

Since 2005, Ms. Garvin have been trying to make the minimum payments. However, Ms. Garvin stopped paying my mortgages in June 2009, and she received a Notice of Default. Garvin Decl. at ¶ 58.

Ms. Garvin recently sold her home in a short sale. Garvin Decl. at ¶ 59.

The stress of this transaction has really affected Ms. Garvin's health. What should have been a happy and exciting time - the purchase of a family home, as turned into a nightmare. Ms. Garvin has fibromyalgia, and has sought various treatments unsuccessfully. The fibromyalgia is exacerbated by stress, and her life has been nothing but stress since Ms. Garvin bought the home. Ms. Garvin am unable to work, and unable to collect social security benefits yet. Garvin Decl. at ¶ 60.

Plaintiff Maria Garvin's MPA ISO Motion for Entry of Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,754,534v1 9-2-11

8

This has also taken a toll on her relationship with her daughter and son-in-law. tHEY frequently argue, and Ms. Garvin doesn't know if their relationship will withstand all of this. Garvin Decl. at ¶ 61.

Ms. Garvin frequently becomes very depressed. Ms. Garvin cannot leave the bed, she cries all day, and suffers from stomachaches and headaches. Ms. Garvin has become withdrawn and has lost interest in most activities. This has been going on since they bought the home and Ms. Garvin found out that she had been duped by Valdovinos and Tran. Garvin Decl. at ¶ 62.

**Calculation of Damages**

Ms. Garvin paid a deposit of $5,000. Garvin Decl. at ¶ 64.

Ms. Garvin lost the deposit on her rental home because the home she purchased was not ready when they were told it would be. Ms. Garvin would not have incurred this cost had she not purchased the home. The deposit was $1,000. Garvin Decl. at ¶ 65.

Ms. Garvin has paid homeowners insurance for six years, which she would never have had to pay had she not moved into the home. The total amount of payments Ms. Garvin made for homeowners insurance is $3,600. Garvin Decl. at ¶ 66.

Ms. Garvin paid the property tax for five years, which was $34,008.02. Garvin Decl. at ¶ 67.

Ms. Garvin has paid $60 per month for water and trash for the last six years, which she did not pay in her previous apartment. The total Ms. Garvin has paid is $4,320. Garvin Decl. at ¶ 68.

Electricity was covered in her previous home, but it is not paid for here. Ms. Garvin pays on a balanced scale, meaning she pays the same amount every month. That amount is $72.50 per month for six years, or $5,220. Garvin Decl. at ¶ 69.

Ms. Garvin invested a great deal of money in her home. In June of 2007, Ms. Garvin had to get a new garage door and garage door opener, for a total of $2,000. Ms. Garvin had to make non-cosmetic patio repairs for $2,000 in June 2006. Ms. Garvin had to make electrical repairs in the kitchen for $2,500. Ms. Garvin had to make several repairs per Code Enforcement orders

Plaintiff Maria Garvin's MPA ISO Motion for Entry of Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,754,534v1 9-2-11

9

regarding damage done to the property before she moved in for a total of $5,000. In total, Ms. Garvin have paid $11,500 in home repairs. Garvin Decl. at ¶ 70.

Ms. Garvin has had to take out significant cash advances from her credit cards to pay her mortgage. Ms. Garvin took out $8,600 on my Bank of America Visa, $3,000 of which she have paid. Garvin Decl. at ¶ 71.

Ms. Garvin had to take a loan from the City of San Jose through Project Sentinel for victims of predatory lending for $12,000. Garvin Decl. at ¶ 72.

Per the HUD-1 (attached as Exhibit 1 to Garvin Decl.), Century 21 Golden Hills received a commission of $16,550 for her real estate transaction, a transaction Ms. Garvin should never have entered. Garvin Decl. at ¶ 73.

Per the HUD-1, *supra*, Linda Tran and Tara Home Financial received $22,631 in brokers' fees and YSP through this transaction. Garvin Decl. at ¶ 74.

Ms. Garvin believe that her actual damages are a total of $112,429.02. Garvin Decl. at ¶ 75.

This does not include the damage to her credit, which has been substantial. In addition to having a very high debt to income ratio because of the mortgage payments, Ms. Garvin has not been able to pay her bills on time. Ms. Garvin is also severely delinquent in her mortgage. Ms. Garvin has tried to apply for apartments, and she have been denied because of her credit. Garvin Decl. at ¶ 76.

This damage amount does not include Ms. Garvin's emotional distress damages. Because of the fraud that was committed against her, Ms. Garvin has suffered a lot of stress. This has affected Ms. Garvin greatly. Her blood pressure has increased significantly, and now Ms. Garvin has to take medication for it, as well as for fibromyalgia and depression. Garvin Decl. at ¶ 77.

Her fibromyalgia was also made worse, and Ms. Garvin has to take pain medication for chronic pain and neuropathic pain. Her neuropathic condition forced Ms. Garvin to quit working in September 2007. Ms. Garvin could not continue to work because of the pain and depression. Garvin Decl. at ¶ 78.

Plaintiff Maria Garvin's MPA ISO Motion for Entry of Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,754,534v1 9-2-11

10

## II. PROCEDURAL HISTORY OF DEFAULT

Ms. Garvin filed her initial complaint on March 20, 2007. [Doc. 1] Ms. Garvin amended her complaint on May 25, 2007. [Doc 15] On December 27, 2007, Golden Hills filed an Answer to Second Amended Complaint ("Answer") [Doc 74]. Pursuant to a Motion for Sanctions against Golden Hills [Doc. 203] for its failure to comply with the Court Order [Doc. 193] compelling Golden Hills to respond to discovery propounded on it by Plaintiffs, the court imposed sanctions, including striking the Answer pursuant to Federal Rules of Civil Procedure 37(b)(2)(A)(iii) [Doc. 218]. On May 4, 2011, Plaintiffs filed a Request for Entry of Default against Golden Hills [Doc. 267].

## III. ARGUMENT

### A. Legal Standard

Ms. Garvin seeks default under Federal Rule of Civil Procedure 55(b)(2). The factual allegations in the SAC establish the liability of Defendant Golden Hills. It is "the general rule of law that upon default the actual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F. 2d 915, 917 (9th Cir. 1987). Therefore, Ms. Garvin is entitled to the benefits of the allegations of the SAC just as if they had been proved on the merits, unless defendant can prove that the allegations are contrary to uncontroverted material in the file of the case. *In re Consolidated Pretrial Proceeding in Air West Securities Litigation*, 436 F. Supp. 1286, 1289 (N.D. Cal. 1977).

Taken as true, the factual allegations made in the SAC establish the liability of Golden Hills for the predatory lending practices that it and its agents employed on Ms. Garvin.

### B. Negligence

The SAC alleges a negligence claim against Defendant Golden Hills. As stated above, Defendant Golden Hills was the real estate agency on Ms. Garvin's loan transactions. Based upon the facts as alleged in the SAC, Ms. Garvin is entitled to default judgment based upon his ability to prove the following essential elements of a negligence claim, including the heightened fiduciary duty owed by real estate brokers and agents: (1) Defendant Golden Hills owed a duty of care to Ms. Garvin; (2) Defendant Golden Hills, through its acts or omissions, breached its duty to

Plaintiff Maria Garvin's MPA ISO Motion for Entry of Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,754,534v1 9-2-11

11

Ms. Garvin; (3) that Ms. Garvin was damaged by the breaches; and (4) that the breaches were the proximate cause of Ms. Garvin's injury. *See Hoyem v. Manhattan Beach City Sch. Dist.*, 22 Cal. 3d 508, 513-514 (1978).

With regard to duty, California law establishes that real estate agents and brokers owe principals the same obligation of undivided service and loyalty that trustees owe their beneficiaries. *Wyatt v. Union Mortgage Co.*, 24 Cal. 3d 773, 782 (1979). Moreover, a real estate agency "is charged with the duty of fullest disclosure of all material facts concerning the transaction that might affect the principal's decision." *Barry v. Raskov*, 232 Cal. App. 3d 447, 455 (1991).

Here, Defendant Golden Hills breached its duties and did not act with undivided loyalty towards Ms. Garvin. It—through its agents—did not disclose to her all material facts that may have influenced his decision of whether or not to proceed with the purchase of a home. Specifically, Golden Hills engaged in the following practices that were not in the best interests of Ms. Garvin: (1) recommending a home outside of Ms. Garvin's price range and falsely representing to Ms. Garvin that her monthly payments for the financing of that home would be within the range she requested; (2) representing that Ms. Garvin would qualify for the home knowing that Golden Hills' co-conspirator mortgage brokers would submit loan applications on her behalf that contained falsely inflated financial information; (3) representing that Ms. Garvin should overbid on the price of the home to an unreasonable degree to increase the amount of fees received by Golden Hills; (4) misleading Ms. Garvin by referring her to co-conspirator Linda Tran for mortgage financing, who in turn made false representations to Ms. Garvin about the loans that she would obtain; (5) advertising in Spanish speaking periodicals that homes could be purchased without down payment knowing that this was not possible and that home buyers would become indebted to co-conspirator Pablo Curiel who provided "down payment assistance"; and (6) failing to comply with RESPA by accepting unearned or duplicative fees. Ms. Garvin would not have gone through with these loan transactions had she known the truth.

Plaintiff Maria Garvin's MPA ISO Motion for Entry of Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,754,534v1 9-2-11

12

Defendant Golden Hills' breaches caused Ms. Garvin to be damaged. But for the failure of oversight of the activities conducted by Norma Valdovinos, Ms. Garvin may have never been placed into these loans, on terms that she never agreed to.

### C. California Unfair Competition Act, Cal. Bus. & Prof. Code § 17200 et seq.

The SAC also asserts a claim under California Business & Professions Code § 17200 *et seq.*, for acts of unfair competition committed by Defendants Golden Hills.

§ 17200 defines "unfair competition" to mean and include "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The scope of § 17200 is quite broad, and permits violations of other laws to be treated as unfair competition that is independently actionable. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999). "Any person who has suffered injury in fact and has lost money or property as a result of the unfair competition" may bring an action for relief under the law. Cal. Bus. & Prof. Code § 17204. Under this provision, a private plaintiff may bring a § 17200 action even when "the conduct alleged to constitute unfair competition violates a statute for the direct enforcement of which there is no private right of action." *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 565 (1998).

Here, as outlined above, Defendant Golden Hills has engaged in numerous acts of unfair competition to the detriment of Ms. Garvin. These acts include: (1) use of high pressure sales tactics, including Mr. Valdovinos' selection of a home outside of Ms. Garvin's price range and falsely representing to Ms. Garvin that her monthly payments for the financing of that home would be within the range he requested; (2) misrepresentation of the terms and conditions of the bid placed on the home, as well as the loans, fees and costs that were eventually given to Ms. Garvin; (3) referral of Ms. Garvin to co-conspirator Linda Tran to qualify for loans Ms. Garvin could not afford by submission of loan applications that contained falsely inflated financial information; (4) charging and accepting unearned and duplicative fees not reasonably related to the value of services provided; (5) breaching their fiduciary duties owed to Ms. Garvin; and (5) failing to adequately supervise the activities of their employees, Norma Valdovinos.

Plaintiff Maria Garvin's MPA ISO Motion for Entry of Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,754,534v1 9-2-11

13

Under § 17200, a private plaintiff such as Ms. Garvin is entitled to injunctive relief and restitution of money obtained through commission of an unfair business practice. Cal. Bus. & Prof. Code § 17203. *See also Cel-Tech,* 20 Cal. 4th at 179.

**D. Fraud**

Under California law, the elements of fraud are: (1) misrepresentation of a material fact, which may be false representations, concealment or non-disclosure (2) knowledge of falsity (3) intent to defraud and induce reliance on falsity; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court,* 12 Cal. 4th 631, 638 (1996).

In this case, several misrepresentations of material facts were made to Ms. Garvin. First, Defendant Golden Hills, through its agents, falsely assured Ms. Garvin that she would be able to purchase a home without a down payment. Golden Hills, through its agent Norma Valdovinos, placed advertisements in Spanish speaking periodicals that homes could be purchased without down payment. When Ms. Garvin contacted Golden Hills these misrepresentations were repeated to her by Golden Hills' agent. Rather, at all times, Golden Hills knew that it was not possible to purchase a home without a down payment and that potential home buyers would unknowingly become indebted to co-conspirator Pablo Curiel who provided "down payment assistance".

Defendant Golden Hills further misrepresented to Ms. Garvin that based on the monthly payments Ms. Garvin stated that she could afford, that Ms. Garvin could afford the home Golden Hill's agent Ms. Valdovinos recommended that she purchase. Rather, at all times, agents of Golden Hills were aware that the only way that Ms. Garvin would qualify for the home Ms. Valdovinos recommended was if Ms. Garvin's financial statements submitted to the bank grossly inflated her income and other pertinent information. Through its agents, Golden Hills made these statements to Ms. Garvin with the intent to defraud her and induce her reliance on these statements. Ms. Garvin justifiably relied on these misrepresentations, in part because Ms. Garvin did not receive copies of the loan documents translated into Spanish. Nor did Ms. Garvin have the opportunity to take the loan documents with her for review by someone who could translate the documents. Defendants further represented themselves as trustworthy to induce Ms. Garvin to enter into these ruinous loans, and Ms. Garvin has suffered damage in the form of unfavorable

CASE NO. C07-01571 HRL
SV 346,754,534v1 9-2-11

14

loan terms, higher monthly payments and loss of equity. Persons who have committed fraud against another may be held liable for actual, consequential, and punitive damages as well as rescission of contract. Cal. Civ. Code §§ 3343 & 1689; 6 Witkin Sum. Cal. Law Torts § 1710.

### E. Breach of Fiduciary Duty

The SAC alleges a breach of fiduciary duty claim against Defendant Golden Hills. As stated above, Defendant Golden Hills was the real estate agency on Ms. Garvin's loan transactions. Based upon the facts as alleged in the SAC, Ms. Garvin is entitled to default judgment based upon her ability to prove the following essential elements of a breach of fiduciary duty claim owed by real estate brokers and agents: (1) existence of a fiduciary relationship; (2) breach of the fiduciary duty; and (3) damage proximately caused by that breach. *Roberts v. Lomanto,* 112 Cal. App. 4th 1553, 1562 (2003).

With regard to duty, California law establishes that real estate agents and brokers owe principals the same obligation of undivided service and loyalty that trustees owe their beneficiaries. *Wyatt v. Union Mortgage Co.*, 24 C3d 773, 782 (1979). Moreover, a real estate agency "is charged with the duty of fullest disclosure of all material facts concerning the transaction that might affect the principal's decision." *Barry v. Raskov*, 232 Cal. App. 3d 447, 455 (1991).

Here, Defendant Golden Hills breached its duties and did not act with undivided loyalty towards Ms. Garvin. It—through its agents—did not disclose to her all material facts that may have influenced her decision of whether or not to proceed with the purchase of a home. Specifically, Golden Hills engaged in the following practices that were not in the best interests of Ms. Garvin: (1) Valdovinos recommending a home outside of Ms. Garvin's price range and falsely representing to Ms. Garvin that her monthly payments for the financing of that home would be within the range she requested; (2) representing that Ms. Garvin would qualify for the home knowing that Golden Hills' co-conspirator mortgage brokers would submit loan applications on her behalf that contained falsely inflated financial information; (3) misleading Ms. Garvin by referring her to co-conspirator Linda Tran for mortgage financing, who in turn made false representations to Ms. Garvin about the loans that she would obtain; (5) advertising in

Plaintiff Maria Garvin's MPA ISO Motion for Entry of Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,754,534v1 9-2-11

15

Spanish speaking periodicals that homes could be purchased without down payment knowing that this was not possible and that home buyers would become indebted to co-conspirator Pablo Curiel who provided "down payment assistance"; and (6) failing to comply with RESPA by accepting unearned or duplicative fees. Ms. Garvin would not have gone through with these loan transactions had she known the truth.

Defendant Golden Hills' breaches caused Ms. Garvin to be damaged. But for the failure of oversight of the activities conducted by Norma Valdovinos and Jesus Chavez, Ms. Garvin may have never been placed into these loans, on terms that he never agreed to.

### F. Conspiracy to Defraud

The SAC alleges a conspiracy to defraud claim against Defendant Golden Hills based on the fraudulent statements and actions by Golden Hill in conjunction with co-Defendants and co-Conspirators Linda Tran and Pablo Curiel. As stated above, Defendant Golden Hills was the real estate agency on Ms. Garvin's loan transactions. Based upon the facts as alleged in the SAC, Ms. Garvin is entitled to default judgment based upon her ability to prove the following essential elements of conspiracy to defraud. "Liability for civil conspiracy generally requires three elements: (1) formation of the conspiracy (an agreement to commit wrongful acts); (2) operation of the conspiracy (commission of the wrongful acts); and (3) damage resulting from operation of the conspiracy." *People v. Beaumont Inv., Ltd.,* 3 Cal. Rptr.3d 429, 456 (2003) ( citing *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 510-511, 28 Cal.Rptr.2d 475, 869 P.2d 454 (1994)).

Defendants Golden Hills, Linda Tran and Pablo Curiel worked together in an elaborate conspiracy to defraud home buyers such as Ms. Garvin. First, Golden Hills lured in home buyers, including Ms. Garvin, with its advertisements in Spanish speaking periodicals claiming that homes could be purchased without a down payment. Home buyers, including Ms. Garvin, were then recommended to purchase a home outside of their price range and falsely represented that the monthly payments for the financing of that home would be within the range requested.

In the next part of the conspiracy, home buyers, including Ms. Garvin, were referred to loan broker Linda Tran, a co-conspirator mortgage broker who then submitted a false loan

Plaintiff Maria Garvin's MPA ISO Motion for Entry of Default Judgment by Court against Golden Hills
Case No. C07-01571 HRL
SV 346,754,534v1 9-2-11

16

application that contained falsely inflated financial information so that applicants, including Ms. Garvin, would be approved for home outside their price range.

In the final part of the conspiracy, Ms. Tran, despite the representations made by the agents of Golden Hills that Ms. Garvin could purchase homes without a down payment, would draft a straight note, written in English, in favor of co-conspirator Pablo Curiel who provided "down payment assistance" unbeknownst to Ms. Garvin. Ms. Garvin would not have gone through with these loan transactions had she known the truth.

Defendant Golden Hills' breaches in conjunction with breaches by Linda Tran and Pablo Curiel caused Ms. Garvin to be damaged. But for the failure of oversight of the activities conducted by Golden Hill agents Norma Valdovinos, Ms. Garvin may have never been placed into these loans, on terms that she never agreed to.

## IV. DAMAGES

As set forth in the attached declaration of Ms. Garvin, she has established that she is entitled to damages for Defendant Golden Hills' negligence and fraud, as well as restitution for Golden Hills' unlawful conduct.

## V. CONCLUSION

For the reasons stated above, Ms. Garvin respectfully requests that default judgment be entered in her favor against defendant Golden Hills in the amount of **$112,429.02**.

Dated: August 31, 2011                                          FAIR HOUSING LAW PROJECT

                                                                /s/
                                                                Jessica L. Fry
                                                                Attorneys for Plaintiff

Plaintiff Maria Garvin's MPA ISO Motion for Entry of Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,754,534v1 9-2-11

17