KYRA KAZANTZIS (STATE BAR # 154612)
ANNETTE D. KIRKHAM (STATE BAR # 217958)
JESSICA FRY (STATE BAR # 264480)
**FAIR HOUSING LAW PROJECT**
**LAW FOUNDATION OF SILICON VALLEY**
152 N. Third St., 3rd Fl.
San Jose, CA 95112
Telephone: (408) 280-2412
Facsimile: (408) 293-0106
Email: kyrak@lawfoundation.org; annettek@lawfoundation.org;
jessicaf@lawfoundation.org

WILLIAMS J. GOINES (STATE BAR NO. 61290)
KAREN ROSENTHAL (STATE BAR NO. 209419)
CINDY HAMILTON (STATE BAR NO. 217951)
ALICE Y. CHU (STATE BAR NO. 264990)
**GREENBERG TRAURIG LLP**
1900 University Avenue, 5th. Floor
East Palo Alto, CA 94303
Telephone: (650) 328-8500
Facsimile: (650) 328-8508
Email: goinesw@gtlaw.com; rosenthalk@gtlaw.com
hamiltonc@gtlaw.com; louiea@gtlaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARIA A. GARVIN, et al., <br><br> Plaintiff, <br><br> v. <br><br> LINDA TRAN, et al., <br><br> Defendants. | Case No. C07-01571 HRL <br><br> **PLAINTIFF RAUL TORRES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT BY CLERK AGAINST DEFENDANT GOLDEN HILLS ASSOCIATES, INC.** <br><br> F.R.C.P. 55(B)(2) <br><br> Date: September 27, 2011 <br> Time: 9:00 a.m. <br> Dept.: Courtroom 2 <br> Judge: Hon. Howard R. Lloyd |

Plaintiff Raul Torres' MPA In Support of Motion for Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,752,592v1 9-2-11

1

# **TABLE OF CONTENTS**

|   |   | Page |
|---|---|---|
| I. | STATEMENT OF RELEVANT FACTS | 2 |
| II. | PROCEDURAL HISTORY OF DEFAULT | 7 |
| III. | ARGUMENT | 8 |
|   | A. Legal Standard | 8 |
|   | B. Negligence | 8 |
|   | C. California Unfair Competition Act, Cal. Bus. & Prof. Code § 17200 et seq. | 9 |
|   | D. Fraud | 10 |
|   | E. Breach of Fiduciary Duty | 11 |
|   | F. Conspiracy to Defraud | 13 |
| IV. | DAMAGES | 14 |
| V. | CONCLUSION | 14 |

Plaintiff Raul Torres' MPA In Support of Motion for Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,752,592v1 9-2-11

i

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*In re Consolidated Pretrial Proceeding in Air West Securities Litigation*
  436 F. Supp. 1286 (N.D. Cal. 1977) ............................................................................. 8

*TeleVideo Sys., Inc. v. Heidenthal*
  826 F. 2d 915 (9th Cir. 1987) ....................................................................................... 8

**STATE CASES**

*Barry v. Raskov*
  232 Cal. App. 3d 447 (1991) .................................................................................. 8, 12

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*
  20 Cal. 4th 163 (1999) ............................................................................................ 9, 10

*Hoyem v. Manhattan Beach City Sch. Dist.*
  22 Cal. 3d 508 (1978) .................................................................................................. 8

*Lazar v. Superior Court*
  12 Cal. 4th 631 (1996) ............................................................................................... 10

*People v. Beaumont Inv., Ltd.*
  3 Cal. Rptr. 3d 429 (2003) ......................................................................................... 13

*Roberts v. Lomanto*
  112 Cal. App. 4th 1553 (2003) .................................................................................. 11

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*
  17 Cal. 4th 553 (1998) ............................................................................................... 10

*Wyatt v. Union Mortgage Co.*
  24 Cal. 3d 773 (1979) ............................................................................................ 8, 12

**FEDERAL STATUTES**

Federal Rule of Civil Procedure 55(b)(2) ........................................................................ 8

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 ........................................................................... 9, 10, i

Cal. Bus. & Prof. Code § 17203 ..................................................................................... 10

Cal. Civ. Code § 1689 ..................................................................................................... 11

Cal. Civ. Code § 3343 ..................................................................................................... 11

**OTHER AUTHORITIES**

6 Witkin Sum. Cal. Law Torts § 1710 ............................................................................ 11

Plaintiff Raul Torres' MPA In Support of Motion for Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,752,592v1 9-2-11

i

Plaintiff Raul Torres (hereinafter "Mr. Torres") respectfully submits this memorandum in support of his motion for entry of default judgment against Defendant Century 21 Golden Hills ("Golden Hills").

## I. STATEMENT OF RELEVANT FACTS

Mr. Torres is a Hispanic man who traces his national origin to Mexico (Declaration of Raul Torres ("Torres Decl.") at ¶ 3; Second Amended Complaint [ECF Doc. 50] ("SAC") at ¶ 28.

Mr. Torres has only limited understanding of the English language. All communications by and to Mr. Torres occurred in the Spanish language. Torres Decl.at ¶ 4; SAC at ¶ 28.

At the time Mr. Torres bought a home, he worked as a gardener and landscaper for Petalon Landscape Mangement in San Jose and had an income of approximately $3,300 a month. Torres Decl. at ¶ 6; SAC at ¶ 326.

Mr. Torres is a married man and at the time of the purchase of the home, his wife took care of an elderly woman, earning approximately $600-$700 per month. Mr.Torres and his wife were previously renting an apartment in San Jose and paying $750 a month. Torres Decl. at ¶ 7; SAC at ¶ 326.

I saw an advertisement for the real estate agent services of Norma Valdovinos posted in the magazine El Avisador. The advertisement stated that Valdovinos could assist with the purchase of property with no money down and no work verification. Torres Decl. at ¶ 8; SAC at ¶ 327.

Mr. Torres became interested in buying a house, and contacted Valdovinos by telephone in mid-May after seeing the advertisement. Valdovinos requested that Mr. Torres meet with her in person. Valdovinos spoke to Mr. Torres exclusively in Spanish throughout these transactions. Torres Decl. at ¶ 9; SAC at ¶ 329.

Three days after speaking to her on the phone, I went to visit Valdovinos and Linda Tran about purchasing a house. I told Valdovinos and Tran that I could afford to pay approximately $2,500 to $2,600 per month in mortgage payments. Tran told me that she could find me a loan with a fixed interest rate and monthly mortgage payments of $2,600 per month. Torres Decl. at ¶ 10; SAC at ¶ 330.

Plaintiff Raul Torres' MPA In Support of Motion for Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,752,592v1 9-2-11

2

Valdovinos found Mr. Torres a home in late May/early June. Mr. Torres filled out loan documentation for a loan arranged through Tran. Mr. Torres gave notice that he would be vacating his apartment, as he was supposed to move into his new house in mid-June 2006. A few days later, Valdovinos told Mr. Torres that the previous owner changed his mind about selling the house. Mr. Torres and his wife were forced to move into another apartment while Valdovinos searched for another house for them. Torres Decl. at ¶ 11; SAC at ¶ 331.

In August 2006 Valdovinos found a house for Mr. Torres to purchase, located at 2623 Lombard Avenue, San Jose, California, 95116. Mr. Torres filled out loan documentation for a loan arranged through Tran. Torres Decl. at ¶ 12; SAC at ¶ 332.

The first loan was from Ownit Mortgage Solutions, Inc. for $512,000. The initial monthly payments on this loan were $3,859.84 per month. It was an adjustable interest rate loan with an initial interest rate of 8.875% and a balloon. This loan came with $15,564.72 in various finance charges. The second loan was also from Ownit Mortgage Solutions for $128,000. The monthly payments on this loan were initially $1,342.62. The loan had an adjustable interest rate with a starting rate of 12.5%. Torres Decl. at ¶ 13; SAC at ¶ 333.

When Mr. Torres received his first statement, he learned that his monthly mortgage payments totaled $5,000, approximately $2,500 more per month than what he told Valdovinos and Tran he was able to afford per month. Panicked, Mr. Torres called Valdovinos and Tran and told them he could not afford such high monthly payments. Tran told him not to worry, that in three months he could refinance and his payments would be $2,500 per month. Tran wrote Mr. Torres a personal check for $2,000 to help him make his first month's loan payments. Tran told Mr. Torres that this check was from Linda, and that he would pay it back when he refinanced in three months. Torres Decl. at ¶ 14; SAC at ¶ 334.

From September to November, Mr. Torres struggled to make a monthly loan payment that was approximately $2,500 more per month than what he was able to afford. Torres Decl. at ¶ 15; SAC at ¶ 335.

In November 2006, Tran and Valdovinos called Mr. Torres into her office to sign loan documents for a refinance. Tran told Mr. Torres that the refinance would lower his monthly

Plaintiff Raul Torres' MPA In Support of Motion for Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,752,592v1 9-2-11

3

payments to $2,800 per month, and that he would have a fixed interest rate. Torres Decl. at ¶ 16; SAC at ¶ 336.

Upon Mr. Torres' information and belief, Defendants knowingly fabricated his income and assets in his loan applications. Defendants purposefully withheld information from Mr. Torres regarding the loan to induce him to continue with a loan he could not afford. Torres Decl. at ¶ 1; SAC at ¶ 337.

After signing documents for a first and second loan, Tran told me that I did not qualify for the entire amount of the refinance, and that I would need to sign a third loan through a private party named Pablo Curiel. Torres Decl. at ¶ 18; SAC at ¶ 338.

Mr. Torres questioned Tran about the third loan, and asked why a third loan was necessary since he had good credit. Tran said "you don't have good credit anymore," that the third loan was necessary to refinance, and because he had already signed the first two loan documents. Torres Decl. at ¶ 19; SAC at ¶ 339.

Tran never explained the true nature of the loan documents to Mr. Torres. Mr. Torres believed Tran when she told him that even with the third loan his loan payments would be $2,800 per month. Torres Decl. at ¶ 20; SAC at ¶ 340.

There was no notary present while Mr. Torres signed his loan documents. Torres Decl. at ¶ 21; SAC at ¶ 341.

Valdovinos spoke to Mr. Torres exclusively in Spanish. The loan documents were never provided to him in Spanish. Torres Decl. at ¶ 22; SAC at ¶ 342.

Mr. Torres received some unsigned documents relating to his first two loans. He never received any signed documents. Mr. Torres did not receive any documents relating to the third Curiel loan except the Straight Note. Torres Decl. at ¶ 23; SAC at ¶ 343.

Two weeks later a notary public showed up at Mr. Torres' house unannounced. She told him that the loan documents had been lost and Mr. Torres needed to sign them again, and that he should backdate the document to the date that he signed the original loan papers in Tran's office. After Mr. Torres signed the documents, the notary took his copy of unsigned loan documents that

Plaintiff Raul Torres' MPA In Support of Motion for Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,752,592v1 9-2-11

4

he had in my possession. The documents which the notary took from Mr. Tran were the only copy he had of loan related documents. Torres Decl. at ¶ 24; SAC at ¶ 344.

In the middle of December, Mr. Torres received his first mortgage payment statement after the refinance transaction and realized that his monthly mortgage payment would be only $200 less per month than before the refinance. Torres Decl. at ¶ 25; SAC at ¶ 345.

When Mr. Torres received his first mortgage payment statement, he learned for the first time the terms of the refinance. His first loan was through Alliance Bancorp for $528,000. The initial interest rate was 9.125%. The loan was an adjustable rate balloon note, and the interest rate could be adjusted up to 11.95%. The loan could negatively amortize up to 110% of the original principal borrowed, meaning that payments do not even cover the interest. The loan also had a prepayment penalty. Torres Decl. at ¶ 26; SAC at ¶ 346.

Mr. Torres did not understand that the principal on his first loan would continue to increase even if he made my minimum payments. Torres Decl. at ¶ 27; SAC at ¶ 347.

The second loan was for $66,000 from Alliance Bancorp. The initial interest rate was 12.5%. Torres Decl. at ¶ 28; SAC at ¶ 348.

The third loan was for $87,500 from Pablo Curiel. Tran explained to Mr. Torres that approximately $20,000 of that loan was paid to Defendants as "upfront interest." The loan is interest only for two years, which is due in monthly installments of $729.17, after which time a balloon payment of the entire loan amount will be due. Torres Decl. at ¶ 29; SAC at ¶ 349.

Mr. Torres immediately called Tran to ask her about why the loan payments were higher than what she promised, but Tran would not take his call. Torres Decl. at ¶ 30; SAC at ¶ 350.

Defendants also arranged for Mr. Torres to pay approximately $900 for homeowners insurance through Paul Curiel. Mr. Torres was never informed of and never consented to the homeowners insurance policy, and did not have the opportunity to negotiate its terms. Torres Decl. at ¶ 31; SAC at ¶ 351.

Every month after I signed the loan documents I had severe difficulties trying to make my monthly payments. I lost the home to foreclosure in March 2008. Torres Decl. at ¶ 32; SAC at ¶ 352.

Plaintiff Raul Torres' MPA In Support of Motion for Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,752,592v1 9-2-11

5

After losing the home, Mr. Torres could not find an apartment that would accept him because of his poor credit and low-income. He finally found a converted garage that he now shares with his wife and two children. There is no heat in the winter, no kitchen, and no way to cool it in the summer. They lived in that garage for over a year. Torres Decl. at ¶ 33.

Mr. Torres has now moved to another converted garage, because Code Enforcement came out and told the owner he could not live there. Torres Decl. at ¶ 34.

As a result of the stress of trying to make such high monthly loan payments, Mr. Torres was hospitalized in Santa Clara County Valley Medical Center Hospital for two days. He continues to suffer from the stress associated with the loss of his home. Torres Decl. at ¶ 35; SAC at ¶ 352.

**Calculation of Damages**

Mr. Torres lost the $2,000 deposit on his home. Torres Decl. at ¶ 36.

Mr. Torres paid moving costs of $2,450. He would not have had to pay this had he not bought a home. Torres Decl. at ¶ 37.

Mr. Torres paid homeowners insurance in the amount of $26, which was the balance not covered through escrow. He would not have had to pay this had he not bought a home. Torres Decl. at ¶ 38.

Mr. Torres paid $2,864 in property taxes. He would not have had to pay this had he not bought a home. Torres Decl. at ¶ 39.

Mr. Torres paid $2,300 in water and trash. He would not have had to pay this had he not bought a home. Torres Decl. at ¶ 40.

The home needed a lot of repairs. Mr. Torres put in a new water heater, garbage disposal, bathroom repairs, interior paint, and flood repair. In total, he spent approximately $5,000 on repairs. Torres Decl. at ¶ 41.

Mr. Torres had to take out a cash advance of $7,000 to cover expenses. Torres Decl. at ¶ 42.

Mr. Torres had to take a personal loan from his father for $10,000, of which he has paid back $5,000. Torres Decl. at ¶ 43.

Plaintiff Raul Torres' MPA In Support of Motion for Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,752,592v1 9-2-11

6

Mr. Torres had to take a personal loan of $12,000 from the City of San Jose revolving loan fund for victims of predatory lending. Torres Decl. at ¶ 44.

Mr. Torres' new home is further from his children's school, and he has had to spend $960 on additional transportation. Torres Decl. at ¶ 45.

Mr. Torres has had to put many things in storage since he lost the home, which has cost him $3,600. Torres Decl. at ¶ 46.

Norma Valdovinos received a commission of $31,750. This is reflected in the HUD-1 for the purchase of the property, attached as Exhibit 1. Torres Decl. at ¶ 47.

For the purchase, Linda Tran made $3,755, which is reflected in Exhibit 1. Torres Decl. at ¶ 48.

For the refinance, Linda Tran made $11,422 in fees and YSP. This is reflected in the HUD-1 for the refinance, a true and correct copy of which is attached as Exhibit 2. Torres Decl. at ¶ 49.

Based on the above, Mr. Torres believes that his actual damages alone are $95,127. Torres Decl. at ¶ 50.

## II. **PROCEDURAL HISTORY OF DEFAULT**

Mr. Torres was added as an additional Plaintiff at the time of the filing of Plaintiffs' First Amended Complaint on May 25, 2007. [Doc 15]. A Second Amended Complaint was filed on October 22, 2007 [Doc. 50]. On December 27, 2007, Golden Hills filed an Answer to Second Amended Complaint ("Answer") [Doc 74]. Pursuant to a Motion for Sanctions against Golden Hills [Doc. 203] for its failure to comply with the Court Order [Doc. 193] compelling Golden Hills to respond to discovery propounded on it by Plaintiffs, the court imposed sanctions, including striking the Answer pursuant to Federal Rules of Civil Procedure 37(b)(2)(A)(iii) [Doc. 218]. On May 4, 2011, Plaintiffs filed a Request for Entry of Default against Golden Hills [Doc. 267].

Plaintiff Raul Torres' MPA In Support of Motion for Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,752,592v1 9-2-11

7

III. **ARGUMENT**

A. **Legal Standard**

Mr. Torres seeks default under Federal Rule of Civil Procedure 55(b)(2). The factual allegations in the SAC establish the liability of Defendant Golden Hills. It is "the general rule of law that upon default the actual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F. 2d 915, 917 (9th Cir. 1987). Therefore, Mr. Torres is entitled to the benefits of the allegations of the SAC just as if they had been proved on the merits, unless defendant can prove that the allegations are contrary to uncontroverted material in the file of the case. *In re Consolidated Pretrial Proceeding in Air West Securities Litigation*, 436 F. Supp. 1286, 1289 (N.D. Cal. 1977).

Taken as true, the factual allegations made in the SAC establish the liability of Golden Hills for the predatory lending practices that it and its agents employed on Mr. Torres.

B. **Negligence**

The SAC alleges a negligence claim against Defendant Golden Hills. As stated above, Defendant Golden Hills was the real estate agency on Mr. Torres's loan transactions. Based upon the facts as alleged in the SAC, Mr. Torres is entitled to default judgment based upon his ability to prove the following essential elements of a negligence claim, including the heightened fiduciary duty owed by real estate brokers and agents: (1) Defendant Golden Hills owed a duty of care to Mr. Torres; (2) Defendant Golden Hills, through its acts or omissions, breached its duty to Mr. Torres; (3) that Mr. Torres was damaged by the breaches; and (4) that the breaches were the proximate cause of Mr. Torres's injury. *See Hoyem v. Manhattan Beach City Sch. Dist.*, 22 Cal. 3d 508, 513-514 (1978).

With regard to duty, California law establishes that real estate agents and brokers owe principals the same obligation of undivided service and loyalty that trustees owe their beneficiaries. *Wyatt v. Union Mortgage Co.*, 24 Cal. 3d 773, 782 (1979). Moreover, a real estate agency "is charged with the duty of fullest disclosure of all material facts concerning the transaction that might affect the principal's decision." *Barry v. Raskov*, 232 Cal. App. 3d 447, 455 (1991).

Plaintiff Raul Torres' MPA In Support of Motion for Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,752,592v1 9-2-11

8

Here, Defendant Golden Hills breached its duties and did not act with undivided loyalty towards Mr. Torres. It—through its agents—did not disclose to him all material facts that may have influenced his decision of whether or not to proceed with the purchase of a home. Specifically, Golden Hills engaged in the following practices that were not in the best interests of Mr. Torres: (1) recommending a home outside of Mr. Torres's price range and falsely representing to Mr. Torres that his monthly payments for the financing of that home would be within the range he requested; (2) representing that Mr. Torres would qualify for the home knowing that Golden Hills' co-conspirator mortgage brokers would submit loan applications on his behalf that contained falsely inflated financial information; (3) representing that Mr. Torres should overbid on the price of the home to an unreasonable degree to increase the amount of fees received by Golden Hills; (4) misleading Mr. Torres by referring him to co-conspirator Linda Tran for mortgage financing, who in turn made false representations to Mr. Torres about the loans that he would obtain; (5) advertising in Spanish speaking periodicals that homes could be purchased without down payment knowing that this was not possible and that home buyers would become indebted to co-conspirator Pablo Curiel who provided "down payment assistance"; and (6) failing to comply with RESPA by accepting unearned or duplicative fees. Mr. Torres would not have gone through with these loan transactions had he known the truth.

Defendant Golden Hills' breaches caused Mr. Torres to be damaged. But for the failure of oversight of the activities conducted by Norma Valdovinos, Mr. Torres may have never been placed into these loans, on terms that he never agreed to.

### C. California Unfair Competition Act, Cal. Bus. & Prof. Code § 17200 et seq.

The SAC also asserts a claim under California Business & Professions Code § 17200 *et seq.*, for acts of unfair competition committed by Defendants Golden Hills.

§ 17200 defines "unfair competition" to mean and include "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The scope of § 17200 is quite broad, and permits violations of other laws to be treated as unfair competition that is independently actionable. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999). "Any person who has suffered injury in fact and has lost money

Plaintiff Raul Torres' MPA In Support of Motion for Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,752,592v1 9-2-11

9

or property as a result of the unfair competition" may bring an action for relief under the law. Cal. Bus. & Prof. Code § 17204. Under this provision, a private plaintiff may bring a § 17200 action even when "the conduct alleged to constitute unfair competition violates a statute for the direct enforcement of which there is no private right of action." *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 565 (1998).

Here, as outlined above, Defendant Golden Hills has engaged in numerous acts of unfair competition to the detriment of Mr. Torres. These acts include: (1) use of high pressure sales tactics, including Ms. Valdovinos' selection of a home outside of Mr. Torres's price range and falsely representing to Mr. Torres that his monthly payments for the financing of that home would be within the range he requested; (2) misrepresentation of the terms and conditions of the bid placed on the home, as well as the loans, fees and costs that were eventually given to Mr. Torres; (3) referral of Mr. Torres to co-conspirator Linda Tran to qualify for loans Mr. Torres could not afford by submission of loan applications that contained falsely inflated financial information; (4) charging and accepting unearned and duplicative fees not reasonably related to the value of services provided; (5) breaching their fiduciary duties owed to Mr. Torres; and (5) failing to adequately supervise the activities of their employee, Norma Valdovinos.

Under § 17200, a private plaintiff such as Mr. Torres is entitled to injunctive relief and restitution of money obtained through commission of an unfair business practice. Cal. Bus. & Prof. Code § 17203. *See also Cel-Tech,* 20 Cal. 4th at 179.

### D. Fraud

Under California law, the elements of fraud are: (1) misrepresentation of a material fact, which may be false representations, concealment or non-disclosure (2) knowledge of falsity (3) intent to defraud and induce reliance on falsity; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996).

In this case, several misrepresentations of material facts were made to Mr. Torres. First, Defendant Golden Hills, through its agents, falsely assured Mr. Torres that he would be able to purchase a home without a down payment. Golden Hills, through its agent Norma Valdovinos, placed advertisements in Spanish speaking periodicals that homes could be purchased without

Plaintiff Raul Torres' MPA In Support of Motion for Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,752,592v1 9-2-11

10

down payment. Torres Decl. at ¶ 10; SAC at ¶ 185. When Mr. Torres contacted Golden Hills these misrepresentations were repeated to him by Golden Hills' agent. Rather, at all times, Golden Hills knew that it was not possible to purchase a home without a down payment and that potential home buyers would unknowingly become indebted to co-conspirator Pablo Curiel who provided "down payment assistance".

Defendant Golden Hills further misrepresented to Mr. Torres that based on the monthly payments Mr. Torres stated that he could afford, that Mr. Torres could afford the home Golden Hill's agent, Norma Valdovinos, recommended that he purchase. Rather, at all times, agents of Golden Hills were aware that the only way that Mr. Torres would qualify for the home Ms. Valdovinos recommended was if Mr. Torres's financial statements submitted to the bank grossly inflated his income and other pertinent information. Through its agents, Golden Hills made these statements to Mr. Torres with the intent to defraud him and induce his reliance on these statements. Mr. Torres justifiably relied on these misrepresentations, in part because Mr. Torres did not receive copies of the loan documents translated into Spanish. Nor did Mr. Torres have the opportunity to take the loan documents with his for review by someone who could translate the documents. Defendants further represented themselves as trustworthy to induce Mr. Torres to enter into these ruinous loans, and Mr. Torres has suffered damage in the form of unfavorable loan terms, higher monthly payments and loss of equity. Persons who have committed fraud against another may be held liable for actual, consequential, and punitive damages as well as rescission of contract. Cal. Civ. Code §§ 3343 & 1689; 6 Witkin Sum. Cal. Law Torts § 1710.

### E. Breach of Fiduciary Duty

The SAC alleges a breach of fiduciary duty claim against Defendant Golden Hills. As stated above, Defendant Golden Hills was the real estate agency on Mr. Torres's loan transactions. Based upon the facts as alleged in the SAC, Mr. Torres is entitled to default judgment based upon his ability to prove the following essential elements of a breach of fiduciary duty claim owed by real estate brokers and agents: (1) existence of a fiduciary relationship; (2) breach of the fiduciary duty; and (3) damage proximately caused by that breach. *Roberts v. Lomanto*, 112 Cal. App. 4th 1553, 1562 (2003).

Plaintiff Raul Torres' MPA In Support of Motion for Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,752,592v1 9-2-11

11

With regard to duty, California law establishes that real estate agents and brokers owe principals the same obligation of undivided service and loyalty that trustees owe their beneficiaries. *Wyatt v. Union Mortgage Co.*, 24 C3d 773, 782 (1979). Moreover, a real estate agency "is charged with the duty of fullest disclosure of all material facts concerning the transaction that might affect the principal's decision." *Barry v. Raskov*, 232 Cal. App. 3d 447, 455 (1991).

Here, Defendant Golden Hills breached its duties and did not act with undivided loyalty towards Mr. Torres. It—through its agents—did not disclose to him all material facts that may have influenced his decision of whether or not to proceed with the purchase of a home. Specifically, Golden Hills engaged in the following practices that were not in the best interests of Mr. Torres: (1) Ms. Valdonivos recommending a home outside of Mr. Torres's price range and falsely representing to Mr. Torres that his monthly payments for the financing of that home would be within the range he requested; (2) representing that Mr. Torres would qualify for the home knowing that Golden Hills' co-conspirator mortgage brokers would submit loan applications on his behalf that contained falsely inflated financial information; (3) representing that Mr. Torres should overbid on the price of the home to an unreasonable degree to increase the amount of fees received by Golden Hills; (4) misleading Mr. Torres by referring him to co-conspirator Linda Tran for mortgage financing, who in turn made false representations to Mr. Torres about the loans that he would obtain; (5) advertising in Spanish speaking periodicals that homes could be purchased without down payment knowing that this was not possible and that home buyers would become indebted to co-conspirator Pablo Curiel who provided "down payment assistance"; and (6) failing to comply with RESPA by accepting unearned or duplicative fees. Mr. Torres would not have gone through with these loan transactions had he known the truth.

Defendant Golden Hills' breaches caused Mr. Torres to be damaged. But for the failure of oversight of the activities conducted by Norma Valdovinos, Mr. Torres may have never been placed into these loans, on terms that he never agreed to.

Plaintiff Raul Torres' MPA In Support of Motion for Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,752,592v1 9-2-11

12

F. **Conspiracy to Defraud**

The SAC alleges a conspiracy to defraud claim against Defendant Golden Hills based on the fraudulent statements and actions by Golden Hill in conjunction with co-Defendants and co-Conspirators Linda Tran and Pablo Curiel. As stated above, Defendant Golden Hills was the real estate agency on Mr. Torres's loan transactions. Based upon the facts as alleged in the SAC, Mr. Torres is entitled to default judgment based upon his ability to prove the following essential elements of conspiracy to defraud. "Liability for civil conspiracy generally requires three elements: (1) formation of the conspiracy (an agreement to commit wrongful acts); (2) operation of the conspiracy (commission of the wrongful acts); and (3) damage resulting from operation of the conspiracy." *People v. Beaumont Inv., Ltd.,* 3 Cal. Rptr. 3d 429, 456 (2003) (*citing Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 510-511, 28 Cal.Rptr.2d 475, 869 P.2d 454 (1994)).

Defendants Golden Hills, Linda Tran and Pablo Curiel worked together in an elaborate conspiracy to defraud home buyers such as Mr. Torres. First, Golden Hills lured in home buyers, including Mr. Torres, with its advertisements in Spanish speaking periodicals claiming that homes could be purchased without a down payment. Home buyers, including Mr. Torres, were then recommended to purchase a home outside of their price range and falsely represented that the monthly payments for the financing of that home would be within the range requested.

In the next part of the conspiracy, home buyers, including Mr. Torres, were referred to loan broker Linda Tran, a co-conspirator mortgage broker who then submitted a false loan application that contained falsely inflated financial information so that applicants, including Mr. Torres, would be approved for home outside their price range.

In the final part of the conspiracy, Ms. Tran, despite the representations made by the agents of Golden Hills that Mr. Torres could purchase homes without a down payment, would draft a straight note, written in English, in favor of co-conspirator Pablo Curiel who provided "down payment assistance" unbenownst to Mr. Torres. Mr. Torres would not have gone through with these loan transactions had he known the truth.

Plaintiff Raul Torres' MPA In Support of Motion for Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,752,592v1 9-2-11

13


1     Defendant Golden Hills' breaches in conjunction with breaches by Linda Tran and Pablo
2 Curiel caused Mr. Torres to be damaged. But for the failure of oversight of the activities
3 conducted by Golden Hill agents Norma Valdovinos, Mr. Torres may have never been placed into
4 these loans, on terms that he never agreed to.

5 **IV. DAMAGES**

6     As set forth in the attached declaration of Mr. Torres, he has established that he is entitled
7 to damages for Defendant Golden Hill's negligence and fraud, as well as restitution for Golden
8 Hill's unlawful conduct.

9 **V. <u>CONCLUSION</u>**

10     For the reasons stated above, Mr. Torres respectfully requests that default judgment be
11 entered in his favor against defendant Golden Hills in the amount of **$95,127**.

13 Dated: August 31, 2011                 FAIR HOUSING LAW PROJECT

15                                         /s/
                               Jessica L. Fry
16                                Attorneys for Plaintiff

Plaintiff Raul Torres' MPA In Support of Motion for Default Judgment by Court against Golden Hills
CASE NO. C07-01571 HRL
SV 346,752,592v1 9-2-11

14